Robert B. Sykes (#3180)
C. Peter Sorensen (#16728)
Christina D. Isom (#17244)
**SYKES MCALLISTER LAW OFFICES, PLLC**
311 S. State Street, Suite 240
Salt Lake City, Utah 84111
Telephone No. (801) 533-0222
bob@sykesmcallisterlaw.com
pete@sykesmcallisterlaw.com
christina@sykesmcallisterlaw.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| GARRIK SMITH and SHANEY JOHNSTON, <br><br> Plaintiffs, <br><br> vs. <br><br> TYLER O'DOHERTY, JOSEPH WILSON, JARED NIELSON, TJ SCOTT and JOSH DAVIS, Ogden City Police Officers; DOE OFFICERS 1-10; and OGDEN CITY, by and through its Police Department, <br><br> Defendants. | **COMPLAINT AND JURY DEMAND** <br><br><br> Civil No. _____ <br><br><br> Judge _____ |

Plaintiffs Garrik Smith and Shaney Johnston, complain against Defendants as follows:

**<u>PRELIMINARY STATEMENT</u>**

The following allegations are based upon the undersigned's understanding of the information presently available. This is a civil rights action in which the Plaintiffs seek relief for Defendants' violation of their rights guaranteed by the United States Constitution, specifically the Fourth and Fourteenth Amendments. These rights are further

1

secured by the Civil Rights Act of 1871, codified as 42 U.S.C. § 1983 and § 1988. This action also seeks relief under the law, statutes, and Constitution of the State of Utah, specifically Article I, §§ 7, 9 and 14.

## JURISDICTION AND VENUE

1.     This action arises under the United States Constitution and federal law, particularly under the provisions of the Fourth and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. §§ 1983 and 1988.

2.     This action also arises under the Constitution of the State of Utah Article I, §§ 7, 9 and 14.

3.     This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. §1343 and 42 U.S.C. §1983.

4.     As to the State Constitutional claims, this Court's supplemental jurisdiction is invoked under 28 U.S.C. §1367.

5.     The claims made in this Complaint occurred and arose in the State of Utah, in this District. Venue for the federal claims is therefore proper under 28 U.S.C. §§ 1391 and 1331. Venue for the State claims is proper under 28 U.S.C. §1367.

6.     Plaintiffs are seeking damages pursuant to the claims for relief specified below in amounts to be proved at trial.

7.     This Court has authority to award costs and attorney fees pursuant to 42 U.S.C. §1988, and pursuant to the Court's inherent power under State law.

**8.** This action also seeks redress for violations of Plaintiffs' constitutional rights secured by the Utah Constitution. This Court further has pendent jurisdiction over any and all State claims.

## PARTIES

**9.** Plaintiff **Garrik Smith** ("Garrik") is a resident of Ogden, Weber County, Utah.

**10.** Plaintiff **Shaney Johnston** ("Shaney") is a resident of Ogden, Weber County, Utah. Shaney is Garrik's girlfriend and occupies the house located at 820 23rd Street, Ogden, Utah. Garrik often stays with Shaney and their three children at this home.

**11.** Defendant **Tyler O'Doherty** ("O'Doherty") was at all relevant times herein an officer with the Ogden City Police Department, a department of Ogden City, operating in the course and scope of his employment, and under the color and guise of the laws of the State of Utah.

**12.** Defendant **Joseph Wilson** ("Wilson") was at all relevant times herein an officer with the Ogden City Police Department, a department of Ogden City, operating in the course and scope of his employment, and under the color and guise of the laws of the State of Utah.

**13.** Defendant **Jared Nielson** ("Nielson") was at all relevant times herein an officer with the Ogden City Police Department, a department of Ogden City, operating in the course and scope of his employment, and under the color and guise of the laws of the State of Utah.

14. Defendant **TJ Scott** ("Scott") was at all relevant times herein an officer with the Ogden City Police Department, a department of Ogden City, operating in the course and scope of his employment, and under the color and guise of the laws of the State of Utah.

15. Defendant **Josh Davis** ("Davis") was at all relevant times herein an officer with the Ogden City Police Department, a department of Ogden City, operating in the course and scope of his employment, and under the color and guise of the laws of the State of Utah.

16. Defendants **Doe Officers 1-10** were at all relevant times herein officers of the Ogden Police Department, a department of Ogden City, operating in the course and scope of their employment, and under the color and guise of the laws of the State of Utah. The specific identities are presently unknown, but upon positive identification they will be properly served with process, and their individual names will be added to this Complaint in accordance with the applicable federal rules.

17. Defendant **Ogden City** is a political subdivision of the State of Utah. Ogden City has a law enforcement branch known as the Ogden City Police Department ("OPD") which is authorized to operate by Ogden City and the State of Utah. Ogden City funds and supervises the OPD and is legally responsible for the acts of its employee officers that are within the course and scope of their employment. Ogden City, through the actions of OPD Officers O'Doherty, Wilson, Nielson, Scott, Davis, and Does 1-10, is a "person"

within the meaning of 42 U.S.C. § 1983. Officers O'Doherty, Wilson, Nielson, Scott, Davis, and Does 1-10 were at all times state actors.

## FACTUAL ALLEGATIONS

**18.**    The incident in question occurred on December 2, 2020.

**19.**    On December 2, 2020, Garrik Smith was pulled over in a vehicle under questionable probable cause by Ogden police officers Tyler O'Doherty, and TJ Scott.

**20.**    Officers O'Doherty and Scott, during the traffic stop, observed burnt aluminum foil which might be considered drug paraphernalia in plain view and then conducted a search of Garrik's vehicle.

**21.**    Garrik complied with Officer O'Doherty and Scott's commands.

**22.**    Garrik waited for approximately thirty (30) minutes as Officer O'Doherty conducted a full search of his vehicle, including searching the trunk of Garrik's car.

**23.**    Garrik was peaceful and cordial during the search and complied with all commands he was given.

**24.**    Officers expanded the search from the cab of the vehicle to the trunk of the vehicle.

**25.**    Inside Garrik's trunk was a lock box.

**26.**    Officer O'Doherty opened the lock box with a key he found in the car.

**27.**    Officers had no probable cause to open the lock box.

**28.** Officer O'Doherty found a gun inside the lock box that was in Garrik's trunk.

**29.** Officers questioned Garrik about the gun.

**30.** Officers knew at the time they questioned Garrik that he may be a restricted person and could be seen as being in possession of a firearm.

**31.** Officer O'Doherty and Scott did not arrest Garrik during the traffic stop.

**32.** Officers allowed Garrik to leave without incident.

**33.** Officers, for some unknown reason, decided well after the stop, and after voluntarily releasing Garrik, that they needed to take Garrik into custody.

**34.** Garrik was at Shaney's house, where he often stayed with her and their three (3) children.

**35.** Officers arrived at Shaney's house approximately three (3) hours after the traffic stop to arrest Garrik.

**36.** Officers did not have an arrest warrant for Garrik.

**37.** Officer O'Doherty had sufficient time between the traffic stop and arriving at Shaney's home to obtain an arrest warrant but did not obtain one.

**38.** Officers arrived at Shaney's home at approximately 9:52PM, well after dark.

**39.** Garrik's children were all asleep in their beds when Officers arrived.

**40.** Garrik was getting ready for bed, and about to take a shower when Officers started pounding on his front door and ringing his doorbell.

**41.** Garrik was in the back part of the home, in the bathroom, when Officers arrived and started pounding on the front door.

**42.** Garrik hurried to redress and go open the front door.

**43.** When Garrik opened the front door, he found Officer O'Doherty on the other side.

**44.** O'Doherty told Garrik to come outside and reached inside the home to attempt to grab Garrik and pull him outside the home.

**45.** Officer O'Doherty gave Garrik no reason as to why he was there at his home.

**46.** Garrik stated "no" and retreated backward further into his home.

**47.** Garrik never gave Officers permission to enter his home.

**48.** Officer O'Doherty immediately ran into the home and tackled Garrik as he was backing up.

**49.** O'Doherty tackled Garrik in the kitchen of his home.

**50.** While on the ground, Garrik never resisted arrest.

**51.** Officers Scott, Wilson, Nielson, Davis, and Does 1-10, also entered Garrik's home to help with the assault of Garrik by O'Doherty.

**52.** At no time was Garrik threatening toward any of the Officers in either encounter or interaction with them that night.

**53.** Officers O'Doherty and Wilson rushed into Garrik's home.

**54.** O'Doherty tackled Garrik unreasonably.

**55.** Officer Wilson arrived and struck several closed fit blows to Garrik's back as he was being held down by O'Doherty.

**56.** Officer Wilson bent Garrik over into a "cradle" hold forcefully bending his head and knees together.

**57.** Cradle holds have been widely condemned and shown to be excessive in situations where they are not necessary.

**58.** While Garrik was being held in the cradle hold by Officer Wilson, Officer Davis tased Garrik multiple times.

**59.** While in the cradle hold, other officers tased Garrik repeatedly.

**60.** Garrik was not attempting to flee when Officers rushed into his home and tackled him.

**61.** Officer O'Doherty and Wilson's use of force was extreme and outrageous.

**62.** As a result of Officers' use of force, Garrik's back was broken at the L4 vertebrae.

**63.** No officer received discipline as a result of their use of excessive force against Garrik.

**64.** Officers use of force against Garrik was excessive and unreasonable.

**65.** Garrik was not an immediate threat to officers.

**66.** Garrik was not resisting arrest.

**67.** Officer Davis had no probable cause to tase Garrik.

**68.** There was no legal or factual basis for Garrik to be tased.

**69.** Officers ordered Garrik to roll over, but Garrik could not.

**70.** Garrik was unable to move because of the way Defendants pinned him to the ground in the cradle hold.

**71.** Garrik, at the time Officers entered his home had not committed a crime.

**72.** After unlawfully arresting Garrik, Officers then conducted an illegal search on Shaney and Garrik's home.

**73.** Officers did not have a search warrant to search Shaney and Garrik's home.

**74.** Officers required Shaney to remove her sleeping children from their beds while they conducted an illegal search of their home.

**75.** The children were confused by the chaos created by the OPD officers and were scared.

**76.** The children had to remain in a cold vehicle for over an hour while OPD Officers conducted an illegal search of Shaney and Garrik's home.

**77.** The search of Shaney and Garrik's home was unreasonable.

**78.** OPD Officers had NO probable cause to search Shaney and Garrik's home.

**79.** Shaney and Garrik had committed no crime.

**80.** Shaney had not been involved in any way with Garrik's earlier traffic stop.

**81.** Ogden Police Department did not train their officers in the proper forms of arrest and detainment.

**82.** OPD did not train their officers in the proper procedures in procuring an arrest warrant.

**83.** OPD did not train officers in the proper use of force against individuals being detained or arrested.

**84.** OPD has created an environment that allows officers to use excessive force without consequences.

**85.** OPD had a duty to train officers in the reasonable use of force when effectuating an arrest of an individual.

**86.** OPD had a duty to train officers in the proper methods of obtaining an arrest warrant.

**87.** OPD had a duty to train officers in the proper methods of obtaining a search warrant.

## FIRST CAUSE OF ACTION

### ~ *Excessive Force* ~

**Violation of the Fourth and Fourteenth Amendment**
**Against O'Doherty, Wilson, Scott, Nielson, Davis, and John Does 1-10, in their**
**Individual and Representative Capacities**

**Cognizable Under 42 U.S.C. § 1983**

**88.**    We incorporate all other paragraphs herein.

**89.**    The Supreme Court has outlined three factors to evaluate reasonableness of force under the Fourth Amendment: (1) the *severity of the crime* at issue; (2) whether the suspect poses an *immediate threat* to the safety of the officers or others; and (3) whether the suspect is actively *resisting arrest or attempting to evade* arrest by flight at the precise moment that force is used. *Graham v. Connor,* 490 U.S. 386 (1989).

**90.**    The proper focus in determining the reasonableness of force used is on the events immediately confronting an officer when he or she decided to use force.

**91.**    Force is not reasonable when a suspect is non-violent, not resisting, not fleeing, or poses no threat. Force is not permitted at all when there is no need to use force.

**92.**    Taser use "unquestionably 'seizes' the victim in an abrupt and violent manner." *Cavanaugh v. Woods Cross City,* 625 F.3d 661, 665 (10th Cir. 2010). The nature and quality of "the intrusion into the interest []" of a citizen who is tased is "quite severe." *Id.*

**93.** A police officer violates the Fourth Amendment if he uses a "[t]aser against a non-violent misdemeanant who appeared to pose no threat and who was given no warning or chance to comply with the officer's demands." *Cavanaugh*, 625 F.3d at 666.

**94.** Although use of a taser is certainly preferable to deadly force, it is still a harsh method to subdue a person. A taser, by design, delivers an intense shock that causes great pain and is intended to disable the suspect. *Finlinson v. Millard County,* 2018 WL 5438436, *16 (D. Utah 2018).

**95.** Officer Davis' use of a taser against Garrik was unreasonable and excessive.

**96.** Garrik had committed no serious crime.

**97.** Davis never warned Garrik he was going to be tased if he did not comply with his commands.

**98.** At the precise moment Davis used force and deployed his taser, Garrik was, at most, a non-complying misdemeanant.

**99.** Garrik never made verbal or physical threats, toward any Officers at any time.

**100.** At the precise moment Davis used force, Garrik possessed no weapon.

**101.** Davis' subjective views of the encounter are irrelevant in the analysis of whether or not his use of force was reasonable.

**102.** What is important is how an "objectively reasonable" officer would have addressed the situation.

**103.** Davis' use of force was not objectively reasonable.

**104.** Davis violated Garrik's federal constitutional rights to be free from excessive force.

**105.** An objectively reasonable officer on the scene would have known that tasing a person in the back, without warning, while in a cradle hold by another officers, constituted a serious, outrageous, and unnecessary use of force.

**106.** It is clearly established and well known to all reasonably trained, police officers that an individual's constitutional rights are violated by the unreasonable use of a taser in the manner in which it was deployed in this case.

**107.** In December 2020, every reasonable police officer in Utah would have been aware of the 10th Circuit case of *Lee v. Tucker*, 904 F.3d 1045 (10th Cir. 2018). In *Lee*, sheriff's deputies used a stun gun (taser) on Lee's back for an alleged misdemeanor domestic violence crime that involved arguing, intoxication, and Lee shoving his wife. *Id.* at 1147-48. The court held that "the law was clearly established that an officer may not use a Taser against a non-violent misdemeanant who appeared to pose no threat and who was given no warning or chance to comply with the officer's demands." *Id.* at 1150 (cleaned up and punctuation omitted). Davis would have known in December 2020 that he could not use a taser on Garrik because he was, at most, a non-violent misdemeanant who posed no threat.

**108.** In December 2020, all reasonable police officers in Utah would have been aware of the 10th Circuit decision in *Emmett v. Armstrong*, 973 F.3d 1127 (10th Cir. 2020). Emmett had been drinking in a bar in a small Wyoming town, got in a fight, and then initially ran from Officer Armstrong. Officer Davis and the other Defendants would have known that Garrik could not be tased unless "the officers [or others] were in danger at the precise moment that they used force." *Emmett*, 973 F.3d. at 1136 (citing *Pauly v. White*, 874 F.3d 1197, 1219 (10th Cir. 2017)).

**109.** Officer Davis, acting under color of statute, regulation, custom, and/or usage subjected Garrik to unnecessary, unreasonable, and excessive force, by unlawfully tasing him in the back without warning while he was being held in a cradle hold by another officer.

**110.** Defendants is not entitled to qualified immunity based on his unlawful and illegal use of excessive force.

**111.** Defendant Officers use of unreasonable and excessive force on Garrik directly and proximately caused his injuries and damages set forth herein.

**112.** The conduct of Defendants warrants the imposition of punitive damages as may be allowed by law.

## SECOND CAUSE OF ACTION

### *~ State Constitutional Claims ~*

***Violation of the Utah Constitution***
***Against Officers O'Doherty, Wilson, Scott, Nielson, Davis, and Doe Officers 1-10 in***
***their Individual Capacities***

**Cognizable Under Article 1, Sections 7, 9, and 14 of the Utah Constitution**

**113.**     We incorporate all other paragraphs herein.

**114.**     Article I of the Utah Constitution provides protection of basic rights for Utah citizens, as follows:

> **a.**     Against illegal seizure – Section 7
> **b.**     Against excessive force and unnecessary rigor – Section 9
> **c.**     Against denial of due process – Section 14

**115.**     O'Doherty and Wilson, as explained above, flagrantly violated Garrik's Utah Constitutional rights when he illegally seized him.

**116.**     Davis flagrantly violated Garrik's Utah Constitutional rights when he used excessive force in unreasonably tasing him in the back, without warning.

**117.**     Defendant Officers flagrantly violated Garrik's Utah Constitutional rights by denying him due process.

**118.**     The Utah Constitution Article I, Section 9 states:

> Persons arrested or imprisoned shall not be treated with unnecessary rigor.

**119.**     Wilson flagrantly violated Garrik's Utah Constitutional right to be free from unnecessary rigor.

**120.**     The Utah Supreme Court has clarified the "unnecessary rigor" clause of Article 1 §9 of the Utah Constitution as follows:

The unnecessary rigor clause of the Utah Constitution protects persons arrested or imprisoned from the imposition of circumstances on them during their confinement that ***demand more of the prisoner than society is entitled to require. The restriction on unnecessary rigor is focused on the circumstances and nature of the process and conditions of confinement***.

*Dexter v. Bosko,* 2008 UT 29, ¶17, 184 P.3d 592 (emphasis added). The Court clarified:

"This may include ***being unnecessarily exposed to an increased risk of serious harm***." *Id.* at ¶19 (emphasis added).

**121.** Wilson's actions

**122.** He was not only exposed to that risk, but he suffered directly from it, resulting in injuries to his back.

**123.** The Utah Supreme Court has held:

We have held that the last sentence [of Article I, Section 9] makes section 9 ***broader than its federal counterpart***. *See Bishop I,* 717 P.2d at 267. Article I, section 9 is also a self-executing provision that prohibits specific evils that can be remedied without implementing legislation.

*State v. Lafferty,* 2001 UT 19, ¶73, 20 P.3d 342, 365 (emphasis and bracketed text added).

**124.** Defendant Officers, as explained above, flagrantly violated the Utah Constitution rights of Garrik by exposing him to unnecessary rigor by tackling him, beating him up, tasing him, and placing him in a "cradle hold" which broke his back, causing his injuries.

**125.** Pursuant to the unnecessary rigor clause of Article I, § 9 of the Utah Constitution, Defendants had a duty to ensure that Garrik was not unnecessarily exposed to an increased risk of serious harm.

**126.** Defendants breached this duty by knowingly and intentionally attacking Garrik in his own home without a valid arrest warrant or probable cause to enter his home.

**127.** Defendants have long been aware that there are specific well-established protocols in Ogden City which are used to detain individuals safely.

**128.** Defendants knowingly and willfully did not follow the established protocols to detain individuals safely.

**129.** Because Defendants did not follow protocol in safely detaining Garrik, they unnecessarily exposed him to a significantly higher risk of injury and accordingly "demand[ed] more of the prisoner than society is entitled to require." *Dexter,* at ¶17 (brackets added).

**130.** Defendants' conduct exposed a detained Garrik to harm, thus subjecting him to unnecessary rigor.

**131.** Any reasonable official in the position of each Defendant would have understood that not obtaining an arrest warrant or a search warrant when they arrived at Garrik's home would expose him to an increased risk of harm, which occurred in this case.

**132.** The Utah Supreme Court has held:

> In contrast, to recover monetary damages for a violation of the Utah Constitution, a plaintiff must demonstrate that the provision violated by the defendant is self-executing and then must establish three elements: (1) the plaintiff "suffered a flagrant violation of his or her constitutional rights;" (2) "existing remedies do not redress his or her injuries;" and (3) "equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries."

*Jensen ex rel. Jensen v. Cunningham,* 2011 UT 17, ¶48, 250 P.3d 465 (citing *Spackman ex rel. Spackman v. Bd. Of Educ.,* 2000 UT 87, ¶¶18,23-25, 16 P.3d 533).

133.    Garrik Smith suffered a flagrant violation of his rights under the Utah Constitution, Article I, § 9, when Defendants knowingly and willfully violated protocol requiring them to safely detain Garrik, and instead did not obtain a valid search or arrest warrant. The correct protocol would have necessitated Officers obtaining a warrant to enter Garrik's home and arrest him in a safe manner.

134.    There is no equitable relief that would adequately redress Garrik's loss, nor are there existing remedies that would redress Garrik's injuries.

135.    The Utah Constitution, Article I, Section 7 states:

> No person shall be deprived of life, liberty, or property without due process of law.

136.    Garrik suffered a flagrant violation of his constitutional right not to be deprived of his life without due process when Defendants knowingly and willfully broke his bake while illegally seizing him.

137.    As a direct and proximate result of Defendants' flagrant violation, Garrik's back was broken resulting in injuries.

138.    No other remedy for Garrik's illegal seizure and unconstitutional injuries exists.

139.    The conduct of Defendant Officers warrants the imposition of damages and punitive damages as may be allowed by law and as alleged herein.

## THIRD CAUSE OF ACTION

### *~ Illegal Entry Into a Home~*

### *Against Officers O'Doherty, Wilson, Scott, Nielson, Davis, and Doe Officers 1-10 in their Individual Capacities*

**140.**     Plaintiff incorporates by reference all other paragraphs herein.

**141.**     The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. It also commands that "no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularity describing the place to be searched, and the persons or things to be seized." *Id.*

**142.**     In determining whether a Fourth Amendment violation has occurred, court must "assur[e] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted." *United States v. Jones,* 556 U.S. 400 (2012).

**143.**     "[A] violation occurs when government officers violate a person's 'reasonable expectation of privacy.'" *Apodoca v. New Mexico Adult Probation and Parole,* 998 F. Supp. 2d 1160, 1165 (D. New Mexico 2014).

**144.**     "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Id.* (citing *Kyllo v. United States,* 533 U.S. 27, 31-33 (2001)).

**145.** Entering a dwelling without permission, a warrant, or exigent circumstances, is ***per se unreasonable*** under the Fourth Amendment, subject only to a few specifically established and well delineated exceptions.

**146.** Those who seek exception must show that exigencies of the situation made their court imperative, and the burden is on those seeking the exemption to show the need for it. Absent a warrant, there must be probable cause and/or exigent circumstances that justify entry into a residence.

**147.** Officers in this case claimed that they needed to rush into Shaney's home simply because Garrik backed up asking why they were asking him to come outside.

**148.** However, there was no emergency or probable cause to enter Shaney's home.

**149.** Defendant Officers knowingly and deliberately made a warrantless entry into Shaney's home without probable cause or exigent circumstances.

**150.** Such violation of Plaintiff's rights is actionable under 42 U.S.C. §1983, and Shaney is entitled to judgment against Defendant Officers for damages to be proved at trial.

**151.** Officers did not observe any illegal activity at Shaney's home that would warrant probable cause to search her home.

**152.** Officers had enough time to obtain a valid search warrant to search Shaney's home after they voluntarily ended the traffic stop with Garrik.

**153.**     Officer working for OPD were not entitled to search Shaney's home without a valid warrant.

**154.**     Officers were operating in the course and scope of their employment as Officers of the OPD.

**155.**     Plaintiff is entitled to attorney fees and costs against Defendant Officers under 42 U.S.C. §1988.

## FOURTH CAUSE OF ACTION

### ~ *Unlawful or Deficient, Policies, Procedures and/or Protocols* ~

***Against Ogden City through its Police Department Relating to Defective Policies, Customs or Practices***

**Cognizable Under 42 U.S.C. §1983**

**156.**     Plaintiff incorporates by reference all other allegations herein.

**157.**     The Ogden City Police Department (OPD) is an authorized department or division of Ogden City. Ogden City is therefore responsible for the actions of OPD Officers.

**158.**     On December 2. 2020, as described above, OPD, through Officers O'Doherty, Wilson, Scott, Nielson, Davis, and Does 1-10, perpetrated an outrageous and unreasonable search of Garrik and Shaney's home.

159. On December 2, 2020, as described above. OPD, through Officers O'Doherty, Wilson, Scott, Nielson, Davis, and Does 1-10, perpetrated an outrageous and unreasonable seizure of Garrik.

160. OPD had a duty to fully and adequately train and supervise their Officers to adhere to the proscriptions against unreasonable searches and seizures, avoid illegal arrests and use of excessive force in accordance with clearly established law pursuant to the Fourth Amendment of the United States Constitution.

161. At all relevant times herein, Ogden City was the employer, operator, and/or administrator of the OPD.

162. Ogden City, through OPD, had a duty to create, adopt, and promulgate, implement, enforce, revise, and/or update lawful policies, procedures, and/or protocols on the legal and safe tasing and detention of individuals.

163. Ogden City, through WVCPD, knowingly and recklessly failed to create, adopt, promulgate, implement, enforce, revise, and/or update lawful policies, procedures, and/or protocols regarding tasing, arrest, excessive force, and detention, specifically about when such tactics and procedures are permitted by law and how they were to be conducted.

164. Ogden City, through OPD, failed to create, adopt, promulgate, implement, enforce, revise and/or update lawful policies, procedures and/or protocols ("policies") pertaining to tasing and the safe detention of individuals.

**165.** The failure to have and utilize such policies proximately caused Officers to tase Garrik in the back, without warning.

**166.** Ogden City's failures as described above, caused Defendants to enter Shaney's home, tackle Garrik, force him into a cradle hold, and break his back.

**167.** The above-described actions, or inactions of Ogden City, through the OPD, constitute willful and wanton misconduct and heedless disregard to the rights, health, well-being, and safety of Utah citizens, particularly Garrik. Such heedless disregard warrants the imposition of punitive damages.

**168.** Plaintiffs have been damaged as set forth herein.

**169.** Plaintiffs demand judgment against Ogden City for compensatory damages, for punitive damages, for costs and attorney fees, and for such other relief as this Court deems just and proper, and as may be allowed by law.

## FIFTH CAUSE OF ACTION

### *~ Failure to Train and/or Supervise ~*

### *Against Ogden City through the OPD in their Official Capacity*

### Cognizable Under 42 U.S.C. § 1983

**170.** Plaintiffs incorporate by reference all other allegations herein.

171. The action of Officers O'Doherty, Wilson, Scott, Nielson, Davis, and Doe Officers 1-10 toward Garrik and Shaney were pursuant to, and consistent with, established policies, practices, and/or customs of Defendant Ogden City, through the OPD, for which Ogden City is responsible.

172. OPD had a practice, policy, or custom of arming police officers with tasers and condoning their use without requiring warning, and without providing proper training and/or supervision regarding their safe, reasonable, and appropriate use in situations like the one Defendant Officers faced here.

173. The actions of Officers O'Doherty, Wilson, Scott, Nielson, Davis, and Doe Officers 1-10 show a lack of training in safely detaining individuals.

174. The lack of proper training and supervision caused Defendant Officers to unreasonably and improperly tase Garrik and use unreasonable and excessive force to detain him, directly resulting in injuries and other damages described herein.

175. The failure of Ogden City, through OPD, to properly train and supervise Officers resulted in their illegal entry into Shaney's home and arrest of Garrik.

176. Had there been proper training Garrik never would have been tased and Officers would have obtained a valid arrest warrant prior to arrival at Shaney's home.

177. The failure to train and supervise Defendant Officers caused their reckless conduct which resulted in injuries to Garrik.

178. Defendant Ogden City, through OPD, was deliberately indifferent toward the proper training, arming, and supervision of its police officers.

**179.** The actions of Ogden City, through its OPD, were the proximate cause of Plaintiffs' injuries and damages, including Garrik's injuries and damages, as well as his pain and suffering.

**180.** As a result of OPD's actions, and in order to remedy this important issue of public concern, Plaintiffs have had to retain legal counsel.

## SUMMARY OF INJURIES AND DAMAGES

**181.** Plaintiffs incorporate by reference all other paragraphs herein.

**182.** Garrik was illegally seized by O'Doherety.

**183.** Garrik was severely injured by the officer's actions

**184.** Because of Defendants' unnecessary and unreasonable actions, Garrik has suffered damage including: great physical pain, mental and emotional damage, and economic damage.

**185.** Shaney's home was illegally searched.

**186.** Shaney's rights were violated by this search.

**187.** Because of Defendants' unnecessary and unreasonable actions, Shaney has suffered damage including: mental and emotional damage, and economic damage.

**188.** These damages are caused by the actions of Defendants, specifically Officers O'Doherty, Wilson, Scott, Nielson, Davis, and Doe Officers 1-10, as well as by Ogden City, which employs Defendant Officers.

## JURY DEMANDED

Plaintiffs demand a Jury Trial on all Causes of Action included herein.

## REQUESTS FOR RELIEF

**WHEREFORE,** Plaintiffs pray judgment against Defendants as follows:

**1.** For general and compensatory damages in an amount to be determined at trial;

**2.** For special damages as are shown at trial and as may be allowed by law;

**3.** For punitive damages against Defendants as may be allowed by law and as are shown at trial;

**4.** For pre-judgment interest on the damages assessed by the Court, as allowed by law;

**5.** For Plaintiffs' costs and reasonable attorney fees incurred herein, pursuant to 42 U.S.C. 1988; and as otherwise may be allowed by Utah State or federal law; and,

**6.** For such other and further relief as the Court deems just and proper.

DATED this 24th day of August, 2022.

**SYKES McALLISTER LAW OFFICES, PLLC**

*/s/ C. Peter Sorensen*
ROBERT B. SYKES
C. PETER SORENSEN
CHRISTINA D. ISOM
*Attorneys for Plaintiffs*